**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02885-MSK-NYW

BISON DESIGNS, LLC

    Plaintiff v.

LEJON OF CALIFORNIA, INC.

    Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

    This matter comes before the court on two pending motions: (1) the Motion to Dismiss Under Rule 12(b)(6) filed by Defendant Lejon of California, Inc. ("Defendant" or "Lejon") on November 12, 2014 ("Lejon's Motion to Dismiss") [#7] and (2) the Motion to Dismiss Counterclaims I And II For Failure To Plead With Required Specificity Under Rule 9(B) And Failure To State A Claim Under Rule 12(b)(6) or for More Definite Statement Under Rule 12(e) filed by Plaintiff Bison Designs, LLC ("Plaintiff" or "Bison Designs") on December 3, 2014 ("Bison Design's Motion to Dismiss") [#19]. These motions have been referred to this Magistrate Judge for Recommendation pursuant to the Order Referring Case dated December 3, 2014 [#15], the Reassignment dated February 10, 2015 [#30], and the memoranda dated January 6, 2015 [#27, #28]. The court has reviewed the Parties' papers, the operative pleadings at issue, the applicable case law, and has determined that oral argument would not materially assist in the disposition of these motions. Based on the foregoing, I respectfully RECOMMEND that Lejon's Motion to Dismiss be GRANTED and Bison Designs' Motion to Dismiss be GRANTED.

## BACKGROUND

For the purposes of this Recommendation, the court recites the facts as alleged by both Plaintiff and Defendant in support of the Complaint and the Counterclaims I and II, respectively. Plaintiff Bison Designs is the holder of the trademark of "BISON," protected by two registered trademarks, U.S. Trademark Registration No. 2824484 (the "'484 Registration") dated March 23, 2004, and U.S. Trademark Registration No. 2790481 (the "'481 Registration") dated December 9, 2003. [#1 at ¶¶ 4-5]. The Registrations cover the same mark, "BISON," but are extended to different classes of goods (collectively, "Bison Designs' Marks"). [#1-1, #1-2]. In order to maintain the validity of trademark registrations, trademark holders like Bison Designs are required to file affidavits under oath, attesting to the use of the trademarks for the goods as recited in the applicable registrations. 15 U.S.C. §1058. *See also Prince Lionheart Inc. v. Halo Innovations, Inc.*, No. 06–cv–00324–WDM–PAC, 2007 U.S. Dist. LEXIS 33468, *8 (D. Colo. May 7, 2007) (M.J. Schlatter). A mark may become "incontestable" after five years of continuous use, *see id.*, which then protects it from certain challenges to its validity, such as lack of distinctiveness and lack of secondary meaning. 15 U.S.C. § 1065.

Bison Designs initiated this instant action on October 22, 2014 against Defendant Lejon, alleging that Lejon had and was continuing to improperly use the mark "Vintage Bison" and a visual mark:



for leather bags and wallets, leather briefcases, leather cases, messenger bags, satchels, and belts, and in connection with the promotion, advertising, offering for sale and sale of such goods or other uses in commerce as an indicator of the origin of such good. [#1 at ¶¶ 4-5, 18-19]. Bison Designs alleges that at the Outdoor Retailer Trade Show in or about August 2014, it made Lejon aware of its trademark rights both directed at "BISON," for various classes of goods, including luggage, belt packs, belts and hats. [#1-1, #1-2]. Bison Designs also alleges that it provided Lejon written notice of Lejon's infringement of Bison Designs' trademark rights. [#1 at ¶¶ 23-24]. In its Complaint, Bison Designs asserts three counts against Lejon: (1) trademark counterfeiting; (2) trademark infringement; and (3) unfair competition, and also seeks (4) accounting, (5) injunctive relief, and (6) constructive trust. [#1]. Bison Designs also alleges that Lejon's acts of trademark infringement and unfair competition are willful. [*Id.* at ¶¶ 34, 41].

On November 11, 2014, Lejon filed its instant Motion to Dismiss, arguing that Bison Designs failed to plead a cognizable claim for trademark counterfeiting that is separate and distinct from trademark infringement. [#7]. That same day, Lejon also filed an Answer, in which it responded to the allegations related to the remaining claims for relief, and asserted three counterclaims for declaratory relief for (1) trademark invalidity of both the '481 and '484 Registrations; (2) cancellation[1] of the '481 and '484 Registrations; and (3) non-infringement. [#8]. In support of its affirmative defense of fraud, and its counterclaims of trademark invalidity and cancellation of the Registrations, Lejon alleges, *inter alia*, that "Bison Design (sic)[2] knew

---

[1] Pursuant to 15 U.S.C. § 1119, a court has the authority to cancel a trademark registration, *i.e.*, remove an issued trademark from the Principal Register of the USPTO. The substance of Lejon's counterclaims of trademark invalidity and cancellation appear to overlap.

[2] Defendant refers to Plaintiff as Bison Design, rather than Bison Design<u>s</u>. Where the court

that other companies were using 'Bison' in connection with the production and sale of other goods in commerce, including belts, described in its applications." [#8 at 7]. In addition, Defendant avers that "Bison Design knew that these companies had superior or equal rights to it with respect to the phrase and/or term, and that a likelihood of confusion would result from its use." [*Id.*]   Lejon also contends that Bison Designs knew that it had not used the mark associated with the '484 and '481 Registrations, respectively, had not been in continuous use for five consecutive years after the date of registration in connection with every good described in the application. [*Id.* at 8, 9]. Lejon also asserts alternative bases for the invalidity and cancellation of Bison Designs' Marks, *i.e.*, because Plaintiff has abandoned them or that they are merely descriptive or are deceptively misdescriptive. [*Id.* at ¶¶ 19, 28, 29, and 35].

Bison Designs seeks dismissal of Lejon's first and second counterclaims for trademark invalidity and cancellation of the '481 and '484 Registrations, arguing that Lejon has failed to adequately plead its fraud allegations pursuant to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. [#19]. In its Reply, Bison Designs also argues that, as to the allegations of abandonment and descriptiveness, Counterclaims I and II fail to state a cognizable claim for fraud under Rule 12(b)(6) because they are not sufficiently pled under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). [*Id.* at 6-7; #29 at 4-5]. Bison Designs also contends that descriptiveness is not a proper bases for cancellation, because its marks are incontestable. [#29 at 4-5]. In the alternative, Bison Designs moves the court to order Lejon to provide a more

---

quotes from Defendant's papers, it does not denote each instance of the use of "Bison Design" with a (sic).

4

particular statement with respect to the factual underpinnings of Counterclaims I and II. [#8 at 7-8].

## ANALYSIS

**I.     Standard of Review**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007)). While allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient, *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citation and quotation omitted), the statement need only give fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

The sufficiency of most claims is analyzed under Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, fraud-based claims must meet a higher pleading standard set forth in Rule 9(b), which provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Put another way, to survive a motion to dismiss on its counterclaims based on allegations of fraud committed by Bison Designs on the United States Patent and Trademark Office ("USPTO"), Lejon must set forth "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Heavy*

*Petroleum Partners, Inc. v. Atkins*, 457 Fed. Appx. 735, 742-43 (10th Cir. 2012) (citations omitted). Particularity is not required for allegations of intent, knowledge or state of mind. *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). While the Rule does permit pleadings based on "information and belief," a pleading that merely provides a formulaic recitation of the elements of a claim, without setting forth the particularized factual bases, does not satisfy Rule 9(b). *See zvelo v. SonicWall*, No. 06–cv–00445–PAB–KLM, 2013 WL 5443858, *3 (D. Colo. Sept. 30, 2013) (J. Brimmer).

In applying these standards, the court draws all reasonable factual inferences in favor of the non-moving party. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (*citing Twombly*, 550 U.S. at 544 (2007)). The court may also consider documents referred to in the pleadings if those documents are attached, and there is no dispute as to their authenticity. *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and quotation omitted). Ultimately, the question that the court decides at this phase is not whether or not a party will prevail on its claim or counterclaim, but rather whether the opposing party has fair notice of the claims asserted against it and the factual grounds upon which they are based. *See Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir.2002).

**II.     Lejon's Motion to Dismiss**

Turning first to Lejon's Motion to Dismiss, Defendant seeks to dismiss Bison Designs claim for trademark counterfeiting in violation of § 1114 in violation of the federal Lanham Act.[3]

---

[3] In its Motion to Dismiss, "Lejon certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(b), this motion is exempt from the pre-filing conference of parties." [#7 at 1]. While that is a correct statement under this District's Local Rules, Chief Judge Krieger's Civil Practice Standards specifically directs the Parties to confer prior to filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b). MSK Civ. Practice Standard 7.6.1(a). Pursuant to Rule 1 of the Rules of Civil

[#7 at 6-7]. Lejon argues that Bison Designs have failed to allege the necessary elements to establish a trademark counterfeiting claim, which requires the two marks be "stitch for stitch" copies. [#7 at 5 (citing *Adams v. Grand Slam Club/Ovis*, No. 12–cv–2938–WJM–BNB, 2013 WL 1444335 (D. Colo. Apr. 9, 2013) (J. Martinez)]. Lejon urges the court to find Plaintiff's allegation that "Defendant has used in commerce a counterfeit of the Bison Marks in connection with the sale, offering for sale, and advertising of its good, which use is likely to cause confusion, or to cause mistake, or to deceive, thereby constituting counterfeit of the Bison Marks" inadequate. [*Id.* (citing #1 at ¶ 28)]. Lejon further argues that Bison Designs should be precluded from amending its Complaint because any attempt by Bison Designs to amend would be futile. [#7 at 6-7].

Bison Designs counters by arguing that it has sufficiently stated a claim for trademark counterfeiting, which only requires "a plaintiff [to] plausibly allege using sufficient facts that a defendant: (1) reproduced, counterfeited, copied, or colorably imitated a registered mark (b) and applied such reproduction, counterfeit, copy, or colorable imitation to (c) labels, signs, prints, packages, wrappers, receptacles or advertisements (d) intended to be used in commerce or in connection with the sale of goods or services that (e) such use is likely to cause confusion, or to mistake, or to deceive." [#18 at 3 (no citation)]. Plaintiff also criticizes Lejon's reliance on the *Adams* case, arguing that the court "specifically noted that it found no case law requiring identicality" and urging the court to only "hold[] Plaintiff to prove use that is 'likely to cause confusion, or to cause mistake, or to deceive.'" [*Id.* at 6-7]. Bison Designs focuses upon ¶¶ 27-

---

Procedure, this Magistrate Judge substantively considers Lejon's Motion to Dismiss because the Parties have already fully briefed the issue and it is ripe for disposition. However, this court reminds the Parties to consult and comply with Chief Judge Krieger's Civil Practice Standards in all future filings, or risk the *sua sponte* striking of any non-conforming papers.

28 of its Complaint to satisfy its pleading requirements. [*Id.* at 5]. Bison Designs also contends that if the court is inclined to dismiss its claim for trademark counterfeiting, it should be permitted to amend its Complaint. [*Id.* at #9].

To survive dismissal, Bison Designs must plead sufficient facts to prove the following elements of a trademark counterfeiting claim: (1) Defendant infringed a registered trademark in violation of 35 U.S.C. § 1114; and (2) Defendant intentionally used a non-genuine mark knowing it was counterfeit, as the term counterfeit is defined by the Lanham Act. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011); *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1180 (11th Cir. 1994). *See also* 4 J. Thomas McCarthy, Trademarks and Unfair Competition § 25:15 (4th ed. 2015) (based on Lanham Act §§ 32(1)(a), 35(b), 15 U.S.C. §§ 1114(1)(a), 1117(b)).

The Lanham Act, in pertinent part, defines a counterfeit mark for civil law purposes as either:

> (1) A counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or
>
> (2) A spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of the Lanham Act are made available.

15 U.S.C. § 1116(d)(1)(B). The definition of "counterfeit" encompasses only alleged counterfeit marks used in connection with the same goods or services as those for which the registered mark is in actual use. 4 J. Thomas McCarthy, Trademarks and Unfair Competition § 25:15 (4th ed. 2015). It is clear, as reflected in the manner in which Plaintiff has pled its Complaint, that trademark counterfeiting is distinct from ordinary trademark infringement. *Id.* Indeed, there is

special relief, in the form of seizures and civil monetary remedies, for trademark counterfeiting that are not available for other types of trademark infringement. 35 U.S.C. §§ 1116(d); 1117(b) and (c).

Therefore, contrary to Bison Designs' arguments that its general allegations are sufficient [#18 at 3], a party must plead at least some facts that support the conclusion that the offending mark meets the statutory definition of "counterfeit" in order to survive dismissal. *See Adams v. Grand Slam Club/Ovis*, 2013 WL 1444335, *6 (D. Colo. Apr. 9, 2013) (J. Martinez). The statutory language expressly requires that a counterfeit mark be one that is "identical, or substantially indistinguishable" from the registered mark. 15 U.S.C. § 1116(d)(1)(B). The Merriam-Webster Dictionary defines "identical" as "being the same; having such a close resemblance as to be essentially the same." Alleging that a mark is "nearly identical or confusingly similar" is insufficient to state a claim for trademark counterfeiting. *See Adams*, 2013 WL 1444335 at *7.

Bison Designs pleads no facts in the Complaint for a factfinder to conclude that Lejon's "Vintage Bison" or visual mark are the same, or have such a close resemblance as to be substantially indistinguishable as the marks protected by the '481 and '484 Registrations. In fact, the Complaint makes no attempt to even compare Bison Designs' Marks with the ones used by Lejon. Bison Designs' allegations that "Plaintiff is informed and believes and based thereon alleges that Defendant has used in commerce a counterfeit of Bison Marks in connection with the sale, offering for sale, and advertising of its goods, which use is likely to cause confusion, or to cause mistake, or to deceive, thereby constituting counterfeiting of the Bison Marks," [#1 at ¶ 28], are at best conclusory and cannot save the claim from dismissal.


Lejon also urges the court to preclude Bison Designs from amending its Complaint to allege additional facts to support its trademark counterfeiting claim, arguing that any attempt by Bison Designs to amend would be futile. [#7 at 6]. Bison Designs contends that to the extent that the court dismisses the claim, it should be permitted to replead it. [#18 at 10-12]. In support of this position, Plaintiff requests that the court review documents associated with the prosecution of Lejon's trademarks, and conclude that the "Defendant's marks both contain Plaintiff's BISON Marks and of which marks the word 'BISON' or the image of a bison that makes an average person think of the word 'Bison' is a substantial portion of the Defendant's marks." [*Id.* at 11]. Lejon replies by insisting that the amendment would be futile, introducing evidence of Bison Designs' use of its mark and attaching fifty pages of exhibits to permit the court to compare the Parties' respective marks in use. [#25, # 25-1]. All the while, both Plaintiff and Defendant contend that the court can do this factual comparison, without converting the motion to dismiss into one for summary judgment. [#18 at 11; #25 at 6].

I respectfully disagree. Each party asks the court to find for it on the merits; Lejon essentially seeks to dismiss Bison Design's trademark counterfeiting claim with prejudice, and Bison Designs asks the court to preemptively determine that it should not only be permitted leave to amend (without once mentioning Rule 15(a) or its applicable standards) but also survive a dispositive motion. Given the current procedural posture of the case and the fact that the papers do not conform to Chief Judge Krieger's Civil Practice Standards related to summary judgment motions, I respectfully decline to convert the motion into one for summary judgment. *See Humood v. City of Aurora*, No. 12-cv-02185-RM-CBS, 2014 WL 4345410, at *5 (D. Colo. Aug. 28, 2014) (J. Moore).

In recommending that Bison Designs' first claim for relief for trademark counterfeiting be dismissed without prejudice, the court recognizes that Plaintiff may seek leave in an attempt to amend the claim.[4] A claim that two marks are identical or substantially indistinguishable must be based on plausible facts supporting such a conclusion. *Adams*, 2013 WL 14444335 at *6. The court reminds the Parties to heed their respective obligations under the Local Rules of Practice and Chief Judge Krieger's Civil Practice Standards to meet and confer as well as under Rule 11 of the Federal Rules of Civil Procedure to only assert claims and defenses that have sufficient evidentiary support. *See* 4 J. Thomas McCarthy, Trademarks and Unfair Competition § 25:15 (4th ed. 2015) (observing that "Congress wished to discourage 'boilerplate' charges of counterfeiting in ordinary trademark infringement suits and encouraged the assessment of attorney fees for frivolous counterfeiting allegations") (citation omitted).

### III.    Bison Designs' Motion to Dismiss

In Counterclaims I and II, Lejon seeks to invalidate and cancel Bison Designs' Marks by alleging, *inter alia*, that the '481 and '484 Registrations were procured through fraud upon the USPTO. *See e.g.*, [#8 at ¶¶ 17, 19-27, 35]. The Parties agree that the pleading of Lejon's allegations of fraud are governed by Rule 9(b) of the Federal Rules of Civil Procedure. [#19 at 3; #26 at 2]. However, the Parties vehemently disagree as to whether Lejon has satisfied its duties under Rule 9(b) or 12(b)(6) for its allegations of fraud. In addition, for the first time in its Reply, Bison Designs argues that Lejon has not sufficiently pled facts to support its other identified

---

[4] In reviewing the Scheduling Order entered in this case [#36], it appears that the court inadvertently did not set a deadline for joinder of parties or amendment of pleadings, and one was not proposed by the Parties. [#34 at 6]. Ordinarily, this deadline would be set for forty-five days after the Scheduling Conference, which was held on February 26, 2015, or April 12, 2015. The court hereby sets the deadline for joinder or parties or amendment of pleadings, for May 19, 2015, and will issue a separate Minute Order further memorializing the setting.

bases for invalidity and cancellation, namely, abandonment and descriptiveness/deceptive misdescriptiveness[5] to survive dismissal under Rule 12(b)(6). Alternatively, Bison Designs argues that the court should order Lejon to identify additional facts to support Counterclaims I and II pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. [#29 at 7-8].

### A. Fraud on the USPTO

The Parties agree that to allege fraud on the USPTO during the procedure of a federal trademark to support the counterclaims of invalidity and/or cancellation, Lejon must demonstrate: (1) the registrant made a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance. [#26 at 2 (citing *Prince Lionheart Inc. v. Halo Innovations, Inc.*, No. 06–cv–00324–WDM–PAC, 2007 U.S. Dist. LEXIS 33468, *8 (D. Colo. May 7, 2007) (M.J. Schlatter); #19 at 3 (citing the same at 2007 WL 1346578, at *3]. Indeed, "a party seeking cancellation of an incontestable trademark must show a false representation of a material fact made with a deliberate attempt to mislead the Trademark Office." *Prince Lionheart*, 2007 WL 1346578, at *3.

Lejon alleges that Bison Designs made the following false statements in the procurement of its '481 and '484 Registrations: "(1) that no other company had the right to use the Bison marks (Counterclaim, p. 16, ¶¶ 20–21); (2) that plaintiff did not use the mark on each of the items identified in the list of goods provided by plaintiff to the USPTO (Counterclaim, p. 16, ¶¶

---

[5] Plaintiff contends that certain grounds for invalidity and/or cancellation are not available to Defendant because the marks protected by the '481 and '484 Registrations are incontestable. [#29 at 5].

12

22–23); and (3) that plaintiff falsely represented that it used the marks continuously for each of the goods listed for five consecutive years (Counterclaim, p. 17, ¶¶ 24–27)." [#26 at 2]. Lejon identifies the particular statements alleged to be false, quoted in relevant part:

> (1) Specifically, Bison Design represented under penalty of perjury that "no other person, firm, corporation, or association has the right to use the mark in commerce, either in identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive [#8 at 16, ¶ 20];
>
> (2) Bison Design also falsely represented to the USPTO in its application that the FIRST OR SECOND BISON MARK would be used for the following list of goods:
>
> Webbing sold in bulk, belts; pet supplies, namely collars, leashes, harnesses, fabric dog bowls, and dog packs; luggage, sunglasses cases, belt packs, belt mounted water bottle holders; key chain fobs of webbing, key chain fobs of aluminum, key chain holders, key chain accessories, bottle openers; climbing chalk, sold individually and in bulk, chalk dispenses, belt mounted chalk containers and hats [*id.* at ¶ 22];
>
> (3) Bison Design declared that "the mark is in use in commerce on or in connection with the goods and services identified above as evidenced by the attached specimens showing the mark as used in commerce. The mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce… [*id.* at 17, ¶ 24];
>
> (4) Bison Design declared it continued to declared it continued to use the SECOND BISON MARK "in commerce or in connection with all goods or services listed in the existing registration" for various classes of goods including:
>
> Key fobs and key chain holders; pet supplies, namely collars, leashes and harnesses; back packs for dogs; luggage; belt packs; belt mounted water bottle holders; bottle openers and fabric dog bowls; belts and hats; sporting equipment, namely climbing chalk, sold individually and in bulk, climbing chalk dispensers, and belt mounted chalk containers [*id.* at 17, ¶ 26].

Defendant goes on to allege that each of these statements was made by Bison Designs with knowledge that it was not true, for at least the following reasons:

> (1) Upon information and belief, Bison Design knew that other companies were using the term "Bison in connection with the production and sale of other goods in commerce, including the products described in its applications. Bison Design knew that these

13

companies had superior or equal rights to it with respect to the phrase, and that a likelihood of confusion would result from its use of the phrase as a product identifier. Nevertheless, Bison Design, with the intent to improperly procure registration to which it was not entitled, falsely represented otherwise [*id.* at 16, ¶ 21];

(2) Upon information and belief, Bison Design knew that it did not use "Bison" in connection with every "good" described in its applications. Nevertheless, Bison Design, with the intent to improperly procure registration to which it was not entitled, falsely represented otherwise [*id.* at ¶ 23];

(3) Upon information and belief, Bison Design knew that it did not continuously use the FIRST BISON MARK in connection with every "good" described in its Sections 8 & 15 Declaration. Nevertheless, Bison Design, with the intent to improperly procure registration to which it was not entitled, falsely represented otherwise [*id.* at 17, ¶ 25]; at

(4) Upon information and belief, Bison Design knew that it did not use the SECOND BISON MARK in connection with every "good" described in its Section 8 & 9 Application. Nevertheless, Bison Design, with the intent to improperly renew registration to which it was not entitled, falsely represented otherwise [*id.* at 17, ¶ 27].

Defendant asserts that USPTO relied upon each of these falsehoods in approving Bison Designs' trademark rights, and as a result, Defendant's pecuniary interests and reputational value have been damaged. *See e.g.*, [*id.* at 17 ¶¶ 25, 31].

Bison Designs contends that these allegations, based on "information and belief," are insufficient because Lejon did not set out a specific factual basis for its beliefs. [#29 at 2]. While it is a close question, a review of the entire Complaint leads this court to conclude that Lejon's fraud allegations in its Answer and Counterclaims are not sufficiently detailed at this point to satisfy the requirements of Rule 9(b), and in turn, Rule 12(b)(6). While a party may plead allegations of fraud upon information and belief, it must set out the specific circumstances that lead to its information and belief with particularity. *See Hollander v. Zito*, No. 11-cv-00499-MSK-BNB, 2011 WL 5834688, *4 (D. Colo. No. 21, 2011) (J. Krieger). Put another way, the pleading must set forth the specific facts upon which the belief is reasonably based. *Zvelo*, 2013

WL 5443858, at *3. *See also Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp.2d 897, 917 (N.D. Iowa Dec. 18, 2001) ("[A]llegations still do not satisfy the requirements of Rule 9(b) because the allegations based 'upon information and belief' are not accompanied by a statement of the facts upon which the belief was founded.").

Lejon's Counterclaims I and II are devoid of any factual allegations that led to Lejon to reasonably conclude that Bison Designs' statements were false. Lejon does not identify any other companies that were using the term "Bison" for goods described in Bison Designs' applications. *See General Linen Serv., Inc. v. General Linen Serv. Co., Inc.*, 25 F. Supp.3d 187, 192 (D.N.H. 2014). Nor does it identify any companies that have equal or superior rights to Bison Designs. *Id.* It points to no time period in which Bison Designs' purportedly stopped using its Marks. *Id.* In *Cimmaron*, a Kansas case cited by Defendant, the court specifically identifies a factual basis for the allegation that the statement made by plaintiff to the USPTO that "no other person, firm, corporation, or association has the right to use the mark in commerce," is false – namely, that "[g]iven the number of years and its dealings with the Jane Sutherland McLineys, Cimarron was aware that the Jane Sutherland McLineys were using the marks in connection with the lumber, hardware and retail business at the time the federal application was signed by Lawrence A. Swain." *Cimarron Lumber & Supply Co. v. McLiney Lumber & Supply, LLC*, No. 12-2240-JAR, 2013 WL 1308708, *5 (Mar. 29, 2013). While Defendant is correct that it need not set out a complete evidentiary basis for its allegations, it must, at a minimum, plead some facts to inform the court that there is a reasonable basis for Defendant's "information and belief."[6] Otherwise, every trademark defendant could simply recite the language used by the

---

[6] In *Adams v. Grand Slam Club*, Judge Martinez considered whether the defendant had

trademark holder in the prosecution of the trademark, and speculate "upon information and belief," without more, that such statements were not true. The Tenth Circuit and this court's application of Rule 9(b) requirements simply require more. *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (citing *Koch v. Koch Indus.*, 203 F.3d 1202, 1237 (10th Cir. 2000).

### B.   Abandonment and Descriptiveness/Deceptive Misdescriptiveness

Bison Designs failed to clearly articulate a challenge to the sufficiency of anything other than Lejon's pleading of fraud in support its Counterclaims I and II. [#19]. In fact, Bison Designs' Motion to Dismiss makes no mention of Lejon's theories of abandonment or descriptiveness/descriptive misdescriptiveness, but makes a passing mention that "Counterclaimant has failed to allege any facts about Plaintiff's use or alleged nonuse of the BISON Marks beyond quoting a limited portion of the language used in Counterdefendant's trademark applications, which is the same standard language from any United States Patent and Trademark Office application for trademark registration." [*Id.* at 2]. Plaintiff's discussion of why Defendant's Counterclaims I and II fail to state a cognizable claim offers no additional

---

adequately pled its counterclaim for trademark cancellation relying upon allegations made upon "information and belief." *Adams v. Grand Slam Club/Ovis*, No. 12–cv–2938–WJM–BNB, 2014 WL 103782, *5 (D. Colo. Jan. 10, 2014) (J. Martinez). The court concluded that the defendant's allegations were sufficient to survive a motion to dismiss, observing that "[c]ourts have found that, for the purposes of Rule 9(b), it is adequate to allege that a trademark applicant made various false statements in its statement of use, and that contrary to the applicant's representations, the mark was not being used in conjunction with all of the goods and services when the statement of use was filed." That case, however, is procedurally distinct from this one in that by the time Judge Martinez considered the Motion to Dismiss, the allegations were factually supported by documents submitted in conjunction with a Motion for Partial Summary Judgment.

argument distinct from its discussion of Rule 9(b), and is almost entirely conclusory in nature. [*Id.* at 6-7].

Ordinarily, arguments raised for the first time in Reply are deemed waived, and the court would not entertain them. *See Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1242 (D. Colo. 2010) (citing *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)). However, Lejon preemptively addressed both abandonment and descriptiveness in its Response, [#26 at 4-5], and therefore, the court considers those issues under Rule 8(a) now.

In reviewing the Counterclaims, the court concludes that Defendant's allegations as they currently stand are not specific enough to allow Bison Designs to reasonably respond to them. *See L-3 Commc'ns*, 863 F. Supp. 2d at 1088. For example, Defendant's allegation that:

> Bison Design abandoned its alleged trademarks by failing to adequately police them, and by failing to control the nature and quality of the products sold under the alleged trademarks. For several years during the time that it claimed to own the FIRST AND SECOND BISON MARKS, Bison Design has knowingly allowed countless companies to use the term "Bison" in connection with outdoor sporting goods and leather belts. Bison Design's failure to take legal action and subsequent use of the term "Bison" by countless companies has become so widespread that the public does not associate the FIRST OR SECOND BISON MARK with Bison Design.

[#8 at ¶ 28] is not supported by any additional factual averment about the "countless companies" who use the term "Bison" in connection with sporting goods and leather belts.

### C.    Request for a More Definite Statement

Bison Designs asks the court to order Lejon to provide a more definite statement pursuant to Rule 12(e) based on its argument that Counterclaims I and II are "so vague or ambiguous" that

it cannot reasonably respond to the pleading. [#19 at 7]. Based on the court's Recommendation on Lejon's Motion to Dismiss, this request is moot.

## CONCLUSION

Accordingly, for the reasons set forth herein, I respectfully RECOMMEND that:

(1) Defendant's Motion to Dismiss Under Rule 12(b)(6) filed on November 12, 2014 [#7] be GRANTED and Plaintiff's First Claim for Relief of Trademark Counterfeiting be DISMISSED WITHOUT PREJUDICE; and

(2) Plaintiff's Motion to Dismiss Counterclaim Counterclaims I And II For Failure To Plead With Required Specificity Under Rule 9(B) And Failure To State A Claim Under Rule 12(b)(6) or for More Definite Statement Under Rule 12(e) filed on December 3, 2014 be GRANTED and Defendant's Counterclaims I and II be DISMISSED WITHOUT PREJUDICE.[7]

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's

Dated: May 13, 2015 BY THE COURT:

s/ Nina Y. Wang
United States Magistrate Judge

---

ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).