# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02885-MSK-NYW

BISON DESIGNS, LLC,

      Plaintiff,

v.

LEJON OF CALIFORNIA, INC.,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Plaintiff Bison Designs, LLC's Motion to Dismiss Counterclaims I and II for Failure to Plead with Required Specificity Under Rule 9(b) and for Failure to State a Claim Under Rule 12(b)(6) (the "Second Motion to Dismiss"). [#50, filed July 6, 2015]. The Second Motion to Dismiss was referred to this Magistrate Judge for Recommendation pursuant to the Order Referring Case dated December 3, 2014 [#15], the Reassignment dated February 10, 2015 [#30], and the memorandum dated August 17, 2015 [#61]. The court has reviewed the Parties' papers, the operative pleadings at issue, and the applicable case law. Based on the foregoing, the court respectfully **RECOMMENDS** that the instant Second Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

      For the purposes of this Recommendation, the court recites the facts as alleged by Defendant Lejon of California, Inc. ("Defendant" or "Lejon") in support of Second Amended

Counterclaims I and II, as well as the facts alleged by Plaintiff Bison Designs, LLC ("Plaintiff" or "Bison Designs") in the Complaint.  Because the instant Second Motion to Dismiss is directed at dismissing Defendant's Counterclaims, this court accepts Lejon's well-pleaded facts as true.

Plaintiff Bison Designs is the holder of the trademark of "BISON," protected by two registered trademarks, U.S. Trademark Registration No. 2824484 (the "'484 Registration") dated March 23, 2004, and U.S. Trademark Registration No. 2790481 (the "'481 Registration") dated December 9, 2003.  [#1 at ¶¶ 4-5].  The Registrations cover the same mark, "BISON," but are extended to different classes of goods (collectively, the "Bison Marks").  [#1-1, #1-2].  In order to maintain the validity of trademark registrations, trademark holders like Bison Designs are required to file affidavits under oath, attesting to the use of the trademarks for the goods as recited in the applicable registrations.  15 U.S.C. §1058.  *See also Prince Lionheart, Inc v. Halo Innovations, Inc.*, No. 06-cv-00324-WDM-PAC, 2007 WL 1346578, at *3 (D. Colo. May 7, 2007).  A mark may become "incontestable" after five years of continuous use, *see id.*, which then protects it from certain challenges to its validity, such as lack of distinctiveness and lack of secondary meaning.  15 U.S.C. § 1065.

Bison Designs initiated this instant action on October 22, 2014 against Defendant Lejon, alleging that Lejon had and was continuing to improperly use the mark "Vintage Bison" and a visual mark:



for leather bags and wallets, leather briefcases, leather cases, messenger bags, satchels, and belts, and in connection with the promotion, advertising, offering for sale and sale of such goods or other uses in commerce as an indicator of the origin of such good. [#1 at ¶¶ 4-5, 18-19]. Bison Designs alleges that at the Outdoor Retailer Trade Show in or about August 2014, it made Lejon aware of its trademark rights both directed at "BISON," for various classes of goods, including luggage, belt packs, belts and hats. [#1-1, #1-2]. Bison Designs also alleges that it provided Lejon written notice of Lejon's infringement of Bison Designs' trademark rights. [#1 at ¶¶ 23-24]. In its Complaint, Bison Designs asserts three counts against Lejon: (1) trademark counterfeiting; (2) trademark infringement; and (3) unfair competition, and also seeks (4) accounting, (5) injunctive relief, and (6) constructive trust. [#1]. Bison Designs also alleges that Lejon's acts of trademark infringement and unfair competition are willful. [*Id.* at ¶¶ 34, 41].

This court previously addressed cross-motions to dismiss filed by the Parties in a Recommendation dated May 13, 2015 (the "May 2015 Recommendation"). [#41]. The May 2015 Recommendation addressed Bison Designs' first Motion to Dismiss Counterclaims I And II For Failure To Plead With Required Specificity Under Rule 9(b) and Failure To State A Claim Under Rule 12(b)(6) or for More Definite Statement Under Rule 12(e) [#19] and Lejon's Motion to Dismiss Under Rule 12(b)(6) [#7]. In the May 2015 Recommendation, this court recommended that Defendant's Counterclaims I and II as pled in its November 11, 2014 Answer be dismissed without prejudice. *See* [#41 at 18]. The Honorable Marcia S. Krieger adopted the May 2015 Recommendation on June 2, 2015. [#46].

Lejon then filed Amended Counterclaims on May 19, 2015, and Second Amended Counterclaims on June 5, 2015. In the Second Amended Counterclaims, Lejon first seeks a declaration of trademark invalidity ("first counterclaim" or "invalidity counterclaim") of the Bison Marks on the following bases: (1) the Bison Marks had been secured as a product of fraud on the USPTO; (2) the Bison Marks are merely descriptive without acquired distinctiveness; (3) the Bison Marks are deceptively misdescriptive, generic, misrepresent the source of the purported good(s); and (4) the Bison Marks have been abandoned. [#45 at 5]. In the second counterclaim, Lejon seeks cancellation of the Bison Marks under the same theories ("second counterclaim" or "cancellation counterclaim").[1]   [*Id.* at 8]. In support of its Second Amended Counterclaims, Lejon alleges, *inter alia*, that "Bison Designs knew, and was on constructive or actual notice of, other companies or individuals using and/or registering the term 'Bison' in connection with the production and sale of other goods in commerce, including belts, described in its applications." [*Id.* at 8]. In addition, Defendant avers that "Bison Designs knew, or had actual or constructive notice by virtue of federal trademark registrations or applications that pre-dated Bison Designs' application, and the fact that these companies had superior or equal rights to it with respect to the phrase, and that a likelihood of confusion would result from its use of the phrase as a product identifier." [*Id.* at 9].

On July 6, 2015, Bison Designs again sought dismissal of certain theories supporting Lejon's invalidity and cancellation counterclaims, arguing that Lejon has failed to adequately plead its fraud allegations pursuant to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and that it fails to meet the pleading standard of Rule 12(b)(6) of the Federal Rules of

---

[1] While its invalidity and cancellation counterclaims are substantially similar, only cancellation of a trademark removes it from the principal register. 35 U.S.C. § 1119.

Civil Procedure for other non-fraud-related allegations in the counterclaims. [#50].   On January 15, 2016, Bison Designs has moved for summary judgment on both of Lejon's counterclaims, arguing that Lejon has failed to establish a triable as to either of its Counterclaims on the same bases that it filed the instant Second Motion to Dismiss. [#67].   Lejon also moved for summary judgment. [#66].   The court now considers the instant Second Motion to Dismiss, in light of the pending Motions for Summary Judgment.

## ANALYSIS

### I.   The Parties' Duty to Follow the Civil Practice Standards

As an initial matter, Lejon devotes a portion of its Opposition to the Second Motion to Dismiss to arguing about Bison Designs' failure to comply with the court's directives, including Chief Judge Krieger's Civil Practice Standards.   *See* [#57 at 2-4].   Lejon argues that Bison Designs violated the Civil Practice Standards by failing to meaningfully meet and confer prior to filing the Second Motion to Dismiss. [#50 at 2].   Lejon also argues that Bison Designs fails to include the required contents of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), as set out in Civil Practice Standard 7.6.1(c), including not clearly stating the grounds for dismissal, which party bears the burden of proof on each claim, the material facts, and whether materials outside the pleadings should be considered. [#57 at 3].   Lejon further argues that Bison Designs' Second Motion to Dismiss is inadequately formatted and includes an improper exhibit. [#57 at 3-4].

Before it addresses Lejon's arguments, the court notes that it is unclear that Lejon ever properly presented its operative Second Amended Counterclaims to the court.   In its May 2015 Recommendation, this court observed that a deadline for joinder of parties and amendment of pleadings inadvertently had not been set within the Scheduling Order, and set a May 19, 2015

deadline.  [#41 at 11 n.4].  Lejon improperly construed this footnote as affirmative leave of the court under Fed. R. Civ. P. 15(a)(2) to file amended counterclaims.  [#42 at 1 n.1].  In this District, a deadline for amendment of pleadings and joinder of parties is not equivalent to leave of court to file an amended pleading; rather, a deadline for amendment of pleadings and joinder of parties is simply a deadline by which a party can file a motion for leave to file an amended pleading pursuant to Fed. R. Civ. P. 15(a) and D.C.COLO.LCivR 15.1 without having to show good cause for an amendment of the Scheduling Order.  *See Gorsuch, Ltd. B.C., v. Wells Fargo Nat'l Bank, Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); *Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000).

Lejon was out of time to amend its counterclaims as a matter of right under Fed. R. Civ. P. 15(a)(1), and therefore, its first Amended Counterclaims should have been accompanied by an appropriate motion for leave or stipulated notice to file an amended pleading.  Fed. R. Civ. P. 15(a)(2).  Further, according to the Local Rules of Practice that governs this court, a redlined proposed amended pleading must also accompany any motion for or notice of amendment.  D.C.COLO.LCivR 15.1.  Lejon's Amended Counterclaims did not include a redlined proposal.

It is also unclear to the court on what basis Lejon subsequently filed a Second Amended Counterclaims on June 1, 2015, again without leave of court and without written consent of Bison Designs.  [#45].  However, Bison Design did not move to strike either the Amended Counterclaims or Second Amended Counterclaims.  Nonetheless, in recognition of Rule 1's precept that civil actions should be adjudicated in a manner to secure just, speedy, and inexpensive determination of every action, Fed. R. Civ. P. 1, this court addresses and respectfully recommends ruling substantively on the pending Second Motion to Dismiss.

The court will now address Lejon's argument about Bison Designs' failure to meaningfully meet and confer.  Lejon asserts that Bison Designs did not properly comply with the meet and confer requirement because it sent conferral correspondence to counsel for Lejon only four calendar days and one business day before Bison Designs' filing deadline.  [#57 at 2]. Lejon asserts that by sending the correspondence on the eve of the Fourth of July weekend, Bison Designs' counsel left no reasonably adequate time for Lejon's counsel to meaningfully respond to the conferral letter.  [#57 at 2].  Lejon also asserts that it likely could have corrected any pleading defects through an appropriate stipulation to amend its Second Amended Counterclaims.  [#57 at 3].

Bison Designs responds that it satisfied the meet and confer obligation by sending a letter to counsel for Lejon on July 2 outlining what it perceived to be the deficiencies in the Second Amended Counterclaims and followed up on July 6, but counsel for Lejon stated that she was "swamped" and would not be able to respond "with any sort of substance in short order." [#60 at 2].  Bison Designs further states that Lejon never mentioned or proposed any amendment to the counterclaims to correct the identified deficiencies.  [#60 at 3].

The Local Rules of this District require parties to meet and confer prior to filing any motion, except those motions filed in a case of an unrepresented prisoner, motions to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and motions to withdraw by counsel pursuant to D.C.COLO.LAttyR 5(b).  D.C.COLO.LCivR 7.1(a).  D.C.COLO.LAttyR 7.1(a) specifically directs the attorney for the moving party to "confer or make reasonable good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed

matter." *Id.*  A violation of Local Rule 7.1(a) is an independent basis for denial of a motion. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2014 WL 4056578, at *2 (D. Colo. Aug. 14, 2014).  Chief Judge Krieger's Civil Practice Standards require conferral prior to filing a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  The Civil Practice Standards state that "[m]otions brought pursuant to Fed. R. Civ. P. 12(b) are discouraged if the defect is correctable by the filing of an amended pleading."  Civ. Practice Standard 7.6.1(a). Accordingly, "[c]ounsel should confer prior to the filing of the motion to determine whether the deficiency can be corrected by amendment (e.g., failure to plead fraud with specificity) and should exercise their best efforts to stipulate to appropriate amendments." *Id.*

There is no dispute that counsel for Bison Designs sent a letter detailing the deficiencies it perceived in the Second Amended Counterclaims. *See* [#57 at 2; #60-1].  The operative dispute centers around whether the conferral letter was sufficient to satisfy the meet and confer requirement, including because it was sent the day before the Fourth of July holiday weekend, four calendar days prior to Bison Designs' deadline to file its motion.  The court underscores the purpose of the meet and confer rules.  The purpose is to allow the Parties to actually discuss, in a meaningful manner, whether compliance, or a compromise, may be reached without court intervention.  In addition, "one of the many reasons why Rule 7.1A is in place is to encourage and maintain civility between and among counsel." *See Visor v. Sprint/United Mgm't Co.*, No. Civ.A. 97-K-1730, 1997 WL 796989, at *2 (D.Colo. Dec. 31, 1997).  Indeed, nothing precludes the Parties from continuing to meet and confer even after a motion is filed.

In reviewing the facts as presented in the Parties' briefing, the conferral letter Bison Designs' counsel sent to Lejon's counsel, and the email correspondence between the Parties'

counsel on this issue, the court finds that denying the Second Motion to Dismiss on the basis of a failure to meet and confer is not appropriate.  However, the court now expressly reminds the Parties of their duty to meaningfully confer prior to filing of any motion.  To satisfy the requirements of Local Rule 7.1(a), "the parties must hold a conference, possibly through the exchange of correspondence but preferably through person-to-person telephone calls or face-to-face meetings, and must compare views and attempt to reach an agreement." *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636 (D. Colo. 2003).  Had the Parties held such a conference to discuss whether amendments or further information could have cured the alleged deficiencies of Lejon's Second Amended Counterclaims, as specifically directed by Chief Judge Krieger's Practice Standards, perhaps this entire Motion could have been avoided.

Next, Lejon argues that Bison Designs did not include the required contents of a Motion to Dismiss, as set out in Civil Practice Standard 7.6.1(c), including not clearly stating the grounds for dismissal, which party bears the burden of proof on each claim, the material facts, and whether materials outside the pleadings should be considered.  [#57 at 3].  As Bison Designs points out in its Reply in support of the Second Motion to Dismiss, Chief Judge Krieger's Civil Practice Standard 7.6.1(c) specifically states that it pertains to "[m]otions brought pursuant to Fed. R. Civ. P. 12(b)(1)-(5)."  Because Bison Designs' Motion to Dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(6), this court does not find it pertinent to address whether it complies with a practice standard that applies to motions brought pursuant to other portions of Rule 12.

Lejon further argues that the Second Motion to Dismiss does not comply with Chief Judge Krieger's Civil Practice Standard 7.6.1(d) because it is inadequately formatted.  [#57 at 3].  The court disagrees that this alone forms the basis of a substantive denial.  Although perhaps the

Second Motion to Dismiss could have been more neatly formatted, Bison Designs points the court specifically to each of the elements it contends must be alleged, but were not. Accordingly, the court does not recommend dismissing the Second Motion to Dismiss on this basis.

Finally, regarding Lejon's assertion that Bison Designs included an improper exhibit with its briefing that should not be considered by the court, *see* [#57 at 3-5], the court's recommendation on the Second Motion to Dismiss does not rest on the contents of anything in that exhibit.  Accordingly, the court will not address the propriety of Bison Designs attaching that exhibit or whether consideration of that exhibit requires the court to consider the Second Motion to Dismiss under the summary judgment standard set out in Fed. R. Civ. P. 56.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials.") (citing *Brown v. Zavaras*, 63 F.3d 967, 970 (10th Cir. 1995)).

All attorneys who are admitted to practice, and indeed seek admission to practice, before this court must be familiar with the Local Rules of Practice.  *See* D.C.COLO.LAttyR 3(b)(2). Both Parties are again expressly advised that any further failure to comply with the Local Rules of Practice or Chief Judge Krieger's Practice Standards or Trial Preparation Order may lead to sanctions, including but not limited to *sua sponte* striking or denial of a filing without substantive consideration.

II.     **Bison Designs' Second Motion to Dismiss**

Bison Designs divides its Second Motion to Dismiss into two portions.  First, it argues that Lejon's fraud-based theories supporting each of its two counterclaims are insufficiently pled to meet the standard set out in Fed. R. Civ. P. 9(b).  Second, it argues that Lejon has failed to plead sufficient facts to support its counterclaim theories of (1) abandonment for failure to police, (2) descriptiveness, (3) deceptive misdescriptiveness, (4) genericness, and (5) that the Bison Marks misrepresent the source of the goods.  [#50 at 4-7].  The court will first address whether Lejon has sufficient pled fraud under the heightened standard of Fed. R. Civ. P. 9(b).

A.     **Lejon's Fraud-Based Allegations**

1.     **Legal Standard**

As this court previously explained in its May 2015 Recommendation, to survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007)).  While allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient, *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citation and quotation omitted), the statement need only give fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

The sufficiency of most claims is analyzed under Rule 8(a) of the Federal Rules of Civil Procedure.  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  However, fraud-based claims

must meet a higher pleading standard set forth in Rule 9(b), which provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Put another way, to survive a motion to dismiss on its counterclaims based on allegations of fraud committed by Bison Designs on the United States Patent and Trademark Office ("USPTO"), Lejon must set forth "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Heavy Petroleum Partners, Inc. v. Atkins*, 457 F. App'x. 735, 742-43 (10th Cir. 2012) (citations omitted).  Particularity is not required for allegations of intent, knowledge or state of mind.  *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).  While the Rule does permit pleadings based on "information and belief," a pleading that merely provides a formulaic recitation of the elements of a claim, without setting forth the particularized factual bases, does not satisfy Rule 9(b).  *See zvelo v. SonicWall*, No. 06-cv-00445-PAB-KLM, 2013 WL 5443858, at *3 (D. Colo. Sept. 30, 2013).

In applying these standards, the court draws all reasonable factual inferences in favor of the non-moving party.  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).  The court may also consider documents referred to in the pleadings if those documents are attached to the pleadings and there is no dispute as to their authenticity.  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and quotation omitted).  Ultimately, the question that the court decides at this phase is not whether a party will prevail on its claim or counterclaim, but rather whether the opposing party has fair

notice of the claims asserted against it and the factual grounds upon which they are based.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

### 2.      Analysis

Bison Designs argues that to the extent that Counterclaims I and II rely upon theories of alleged fraud, they should be dismissed pursuant to Rule 9(b) because Lejon fails to plead sufficient facts regarding Bison Designs' willful deceptive intent in committing the alleged fraud against the USPTO.  [#50 at 10].

Counterclaims I and II contain allegations that Bison Designs committed fraud on the USPTO in obtaining its trademark registration.  [#45 at ¶¶ 21-22, 24, 33-36].  The Lanham Act provides for cancellation of a trademark registration at any time if the "registration was obtained fraudulently."  15 U.S.C. § 1064(3); *see In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).  Even an incontestable registration may be cancelled on the grounds that it was fraudulently obtained.  15 U.S.C. § 1115(b)(1).  If a court determines that the registrant is not entitled to ownership of the mark due to fraud, the court is empowered to order cancellation of the registration.  *See* 15 U.S.C. § 1119.

In a trademark case, "a party seeking cancellation of an incontestable registered trademark on grounds of fraud must show a false representation of a material fact made with a deliberate attempt to mislead the Trademark Office."  *Prince Lionheart*, 2007 WL 1346578, at *3 (citing *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 312 (S.D.N.Y. 2000)).  "In other words, deception must be willful to constitute fraud."  *Bose*, 580 F.3d at 1243.  "There is no fraud if a false representation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive."  *Daimlerchrysler Corp. & Chrysler, LLC*, 94 U.S.P.Q.2d

1086, at *4 (TTAB Jan. 14, 2010) (citing *Bose*, 91 USPQ2d at 1940).  "'[B]ecause direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement.'"  *Bose*, 580 F.3d at 1245 (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Although Rule 9(b) permits knowledge and intent to be alleged generally, Lejon is still required to assert underlying facts that permit the Court to infer the requisite state of mind.  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

The Second Amended Counterclaims include the following allegations that Bison Designs made false or fraudulent representations to the USPTO that the USPTO relied on in reaching the decision to issue its trademark registrations:

- "Bison Designs was on constructive or actual notice of at least five marks registered in classes 18 and 25 containing 'bison,' registered with the USPTO prior to Bison Designs' application dated 2002. Attached as Exhibit '1' to this Counterclaim is a copy of a Thomson CompuMark search report identifying the federally registered marks including the term 'bison.' [citing five specific marks that were federally registered prior to the date of Bison Designs' application]."  [#45 at ¶ 16].

- "Bison Designs was on constructive or actual notice of the common law use of the term 'bison' to describe the leather in their goods. The Thomson CompuMark search report attached as Exhibit '1' shows some of these common law users that were active in the production of leather belts and other items of clothing prior to and at the time of Bison Designs' application, registration, and subsequent declarations."  [#45 at ¶ 17].

- "Bison Designs was also on constructive or actual notice of numerous other companies or individuals using the term 'bison' in their company mark or in their

product marks via a simple Google search. Attached as Exhibit '2' are screen shots from such a Google search, where the term "bison" is used in connection with belts, and other leather materials."  [#45 at ¶ 18].

- "Bison Designs falsely represented to the USPTO under penalty of perjury that 'no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive[.]'"  [#45 at ¶ 21].

- "Bison Designs further knew, and was on constructive or actual notice of, other companies using the term 'Bison' in connection with the production and sale of other goods in commerce, including the products described in its applications."  [#45 at ¶ 22].

- "Bison Designs knew, or had constructive notice by virtue of federal trademark registrations or applications that pre-dated Bison Designs' application, and the fact that these companies had superior or equal rights to it with respect to the phrase, and that a likelihood of confusion would result from its use of the phrase as a product identifier for its own goods."  [#45 at ¶ 22].

- "Nevertheless, Bison Designs, with the intent to improperly procure registration to which it was not entitled, falsely represented otherwise. The USPTO relied on this information in granting the registrations."  [#45 at ¶ 22].

- "Cancellation is appropriate because Bison Designs made at least one fraudulent representation to the USPTO. Bison Designs misrepresented under penalty of perjury that 'no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive[.]'"  [#45 at ¶ 34].

- "Bison Designs knew, and was on constructive or actual notice of, other companies or individuals using and/or registering the term "Bison" in connection with the production and sale of other goods in commerce, including the products described in its applications. Bison Designs knew, or had actual or constructive notice by virtue of federal trademark registrations or applications that pre-dated Bison Designs' application, and the fact that these companies had superior or equal rights to it with respect to the phrase, and that a likelihood of confusion would result from its use of the phrase as a product identifier. Nevertheless, Bison Designs, with the intent to improperly procure registration to which it was not entitled, falsely represented otherwise. The USPTO relied on this information."  [#45 at ¶ 35].

On a Motion to Dismiss, the court must accept as true Lejon's sufficiently pled factual allegations and draw all reasonable inferences in its favor. *Iqbal*, 556 U.S. at 678. Applying this standard, this court concludes that Lejon has sufficiently pled fraud for the purposes of surviving dismissal under Rule 9(b). Lejon identifies Bison Designs' 2002 application as purportedly based on fraudulent information with its amendments to its Second Amended Counterclaims. [#45 at ¶ 16]. And regardless of whether the contents in the attachments to the Second Amended Counterclaims are correct, Lejon has factually alleged that information existed prior to Bison Designs' applications, registrations, and subsequent declarations, to which Bison Designs' allegedly knew or had notice of, rendering Bison Designs' statements as false. [*Id.* at ¶ 17]. The purpose of Rule 9(b)'s pleading requirements is to give a party charged with fraud sufficient notice of the allegations. It does not require a party to recite detailed evidentiary support, or that the allegations be factually or legally valid. *See Celestial Seasonings*, 124 F.3d at 1253-54. Lejon's additional factual allegations, though sparse, are enough in this instance, particularly in light of Bison Designs' pending motion for summary judgment, to survive Rule 9(b) dismissal. *Adams v. Grand Slam Club/Ovis*, No. 12-CV-2938-WJM-BNB, 2014 WL 103782, at *6 (D. Colo. Jan. 10, 2014) ("It would be an exultation of form over substance to dismiss this counterclaim and require [Defendant] to replead it without the phrase 'information and belief,' thus mooting [Defendant's] Motion for Partial Summary Judgment and requiring [Defendant] to re-file it in identical form.").

**B.**     **Bison Designs' Arguments Under Fed. R. Civ. P. 12(b)(6)**

**1.**     **Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Kerber v. Qwest Group Life Ins. Plan*, 544 F. Supp. 2d 1187, 1191 (D. Colo. 2008) (quoting *Twombly*, 550 U.S. at 570).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Twombly*, 550 U.S. at 555 (citations omitted).

Conclusory allegations or legal conclusions masquerading as factual conclusions will not prevent a motion to dismiss.  *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1299 (D. Colo. 2008) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  "[A] plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss . . . .  Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974).

2.      **Analysis**

a.      **Abandonment for Failure to Police**

Bison Designs also seeks to dismiss Lejon's Counterclaims for failure to state a claim

insofar as they rely upon Bison Designs' alleged abandonment for failure to police.  Under the

relevant part of 15 U.S.C. § 1127, "A mark shall be deemed to be 'abandoned' if either of the

following occurs: . . . (2) When any course of conduct of the owner, including acts of omission

as well as commission, causes the mark to become the generic name for the goods or services on

or in connection with which it is used or otherwise to lose its significance as a mark.  Purchaser

motivation shall not be a test for determining abandonment under this paragraph."  15 U.S.C. §

1127.  "To state a claim for abandonment under the Lanham Act, a plaintiff must allege that: (1)

the mark was abandoned through non-use, or (2) the mark has become generic."  *DC Labs Inc. v.*

*Celebrity Signatures Int'l, Inc.*, 2013 U.S. Dist. LEXIS 110752, at *5-6 (S.D. Cal. Aug. 6, 2013);

15 U.S.C. § 1127.

Lejon's First Counterclaim alleges:

The FIRST and SECOND BISON MARKS are also invalid because Bison
Designs abandoned its alleged trademarks by failing to adequately police them,
and by failing to control the nature and quality of the products sold under the
alleged trademarks. For several years during the time that it claimed to own the
FIRST and SECOND BISON MARKS, Bison Designs has knowingly allowed
countless companies to use the term "Bison" in connection with outdoor sporting
goods and leather products. A Thomson CompuMark Search (Exhibit "1") or a
simple Google search (Exhibit "2") reveal multiple companies that publically use
the term "bison" in connection with their clothing, sporting, and leather products.
Bison Designs' Responses to Requests for Admissions contains an unqualified
admission that it has never instituted any prior infringement action, despite
knowledge of other companies' use of the term "bison." See, Attached as Exhibit
3: Responses to Requests for Admissions, Nos. 8 and 9. Bison Designs' failure to
take legal action and subsequent use of the term "Bison" by countless companies
has become so widespread that the public does not associate the FIRST OR
SECOND BISON MARK with Bison Designs.

18

[#45 at ¶ 26]; *see also* [#45 at ¶ 38].

According to Bison Designs, Lejon fails to plead a plausible claim for abandonment because the allegation that "the public does not associate the FIRST OR SECOND BISON MARK with Bison Designs" is "purchaser motivation," which is not the proper test for trademark abandonment.  [#50 at 4].  Bison Designs also argues that many of the other marks and common law uses that Lejon references as appearing in the Thomson CompuMark are not for the same goods and therefore, pursuit of those users for their uses of the Bison Marks would have been unlawful.  [#50 at 4].

The court finds that Lejon has sufficiently pled a counterclaim based on a theory of abandonment.  First, Lejon has stated facts which, if true, establish a claim that the Bison Marks have been abandoned due to Bison Marks' failure to protect the marks from becoming generic. The allegations in paragraphs 26 and 38 of the Second Amended Counterclaims, if true, establish that Bison Designs has had longstanding knowledge of others' use of the mark, but has failed to police those uses.  Moreover, if Lejon's allegations in the Second Amended Counterclaims are true, this widespread, non-policed use has caused the mark to become generic.  The court does not find it appropriate to address Bison Designs' arguments about whether or not it believes that the companies listed in the exhibit attached to the Second Amended Counterclaims sell the same goods as it.  Such an inquiry goes to the merits of the counterclaims and is not an appropriate consideration on a Motion to Dismiss.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

### b. Descriptiveness

Bison Designs next argues that Lejon's counterclaims based on a theory of descriptiveness of the Bison Marks fail because descriptiveness is not a lawful basis for challenging the validity of incontestable marks like the Bison Marks. [#50 at 5]. In support of this argument, Bison Designs cites to the Supreme Court's decision in *Park 'n Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985). [#50 at 16]. Lejon responds by arguing that its counterclaim alleging descriptiveness of the Bison Marks should not be dismissed because Lejon's fraudulent procurement claim causes Bison Designs to lose the incontestability of the Bison Marks, subjecting them to an invalidation claim based on mere descriptiveness.

In *Park 'n Fly*, the Supreme Court addressed whether an uncontestable trademark registration can be challenged as being merely descriptive. The Supreme Court found that "[t]he language of the Lanham Act . . . refutes any conclusion that an incontestable mark may be challenged as merely descriptive." *Park 'n Fly,* 469 U.S. at 196; *see also Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 924 (10th Cir. 1986) ("An 'incontestable' mark cannot be challenged as lacking secondary meaning; such marks are conclusively presumed to be nondescriptive or to have acquired secondary meaning.") (internal citations omitted).

Lejon concedes that if the Bison Marks are incontestable, then its Counterclaims are not viable to the extent that they are based on descriptiveness. [#57 at 20]. Nevertheless, Lejon argues that it can challenge the descriptiveness of an incontestable mark because it is simultaneously making an argument which, if it ultimately prevails upon, could cause the Bison Design marks to lose their incontestable status. [*Id.*]. Though Lejon's argument has some limited visceral appeal, it cites no authority that supports the conclusion that it may assert

descriptiveness as a separate basis for its Counterclaims contingent upon a successful challenge to incontestability.

The Trademark Act enumerates certain defenses and defects to incontestability, 15 U.S.C. § 1115(b), and while Lejon is free to challenge the Bison Marks' status as incontestable on those bases, it does not have a separate right to assert Counterclaims of Invalidity and Cancellation based on descriptiveness. 3 McCarthy on Trademarks and Unfair Competition § 20:55 (4th ed. Dec. 2015); 15 U.S.C. § 1064.  Mere descriptiveness no longer constitutes a valid ground for cancellation of the Bison Marks.  *See Seawright v. M. Shanken Commc'ns, Inc.*, No. CIV. JKB-14-1326, 2014 WL 4258311, at *3-4 (D. Md. Aug. 26, 2014) *aff'd sub nom. Seawright v. M. Shanken Commc'ns*, 594 F. App'x 132 (4th Cir. 2015).  To the extent that Lejon prevails on establishing that the Bison Marks are not incontestable because of fraud, abandonment or genericness, then the Bison Marks will be invalid and/or cancelled on those same grounds.  Lejon does not have a separate ground to move for invalidity or cancellation based on descriptiveness, contingent upon its challenge of incontestability.  *Ferring B.V. v. Fera Pharm., LLC*, No. CV 13-4640 SJF AKT, 2014 WL 4829053, at *10 (E.D.N.Y. Aug. 13, 2014) *rep't & rec. adopted*, No. 13-CV-4640 SJF AKT, 2014 WL 4829458 (E.D.N.Y. Sept. 29, 2014) adhered to on reconsideration, No. 13-CV-4640 SJF AKT, 2015 WL 5307793 (E.D.N.Y. Sept. 10, 2015); *Rd. Dawgs Motorcycle Club of the U.S., Inc. v. Cuse Rd. Dawgs, Inc.*, 679 F. Supp. 2d 259, 278 (N.D.N.Y. 2009) ("If a mark is deemed to be incontestable, then the defendant must assert one of the defenses set forth in 15 U.S.C. §§ 1115(b)(1)-(9) to overcome the incontestable status of a mark.").

### c.      Deceptive Misdescriptiveness

Bison Designs argues that Lejon has failed to state a claim for which relief can be granted in its counterclaims for deceptive misdescriptiveness because it relies on the incorrect law for this claim.  [#50 at 6].  In particular, Bison Designs argues that Lejon brought its claim under 15 U.S.C. § 1052(e)(2), which it argues does not provide a basis for a deceptive misdescriptiveness claim.  [#50 at 6].  It argues that the correct law under which Lejon has failed to plead is set out in 15 U.S.C. § 1052(e)(1).  [#50 at 6].  Lejon acknowledges in its Opposition that it did erroneous referenced 15 U.S.C. § 1052(e)(2) rather than 15 U.S.C. § 1052(e)(1); however, Lejon argues that this is a harmless error.  [#45 at ¶ 25; #57 at 20 n.2].  This court agrees with Lejon that Bison Designs should not prevail on its Second Motion to Dismiss simply because of an incorrect citation.  *See Ryan v. Illinois Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999) (refusing to dismiss claims for failure to cite the right statute, finding "[i]t is of no moment . . . that [plaintiffs'] complaint identified the wrong statute as the basis for their claim, as long as their allegations gave notice of a legally sufficient claim," and noting defendants could claim no surprise regarding the applicable legal theory because of the factual allegations in the complaint).

However, Lejon's counterclaim based on deceptive misdescriptiveness suffers from a more fundamental flaw, even with a citation to 15 U.S.C. § 1052(e)(1).  Section 1052 of the Trademark Act does not create a private right of action in court, but rather governs proceedings before the USPTO.  *See Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1133 (9th Cir. 2006); *Seawright*, 2014 WL 4258311 at *2; *Bronco Wine Co. v. United States Dep't of Treasury*, 997 F. Supp. 1318, 1322 (E.D. Cal. 1997), *aff'd sub*

*nom. Bronco Wine Co. v. Bureau of Alcohol, Tobacco & Firearms*, 168 F.3d 498 (9th Cir. 1999)

("The statute addresses the circumstances under which trademarks may or may not be registered

with the Office of Patents and Trademarks, and does not impliedly override otherwise valid

federal laws and regulations."). To the extent that Lejon seeks to cancel the Bison Marks, it must

proceed under 15 U.S.C. § 1064 and 15 U.S.C. § 1115(b), which do not provide for deceptive

misdescriptiveness as a basis for invalidity and/or cancellation – regardless of the applicable

elements of proof.[2]  *Seawright*, 2014 WL 4258311 at *4; *DS Waters of Am., Inc. v. Princess*

*Abita Water, L.L.C.*, 539 F. Supp. 2d 853, 860 (E.D. La. 2008).

### d.  Genericness

Bison Designs contends that Lejon's Second Amended Counterclaims should be

dismissed as they pertain to allegations of genericness because they fail to plead facts regarding

what the relevant public understands about the term "bison." [#50 at 6]. Lejon asserts in its

counterclaims that the Bison Marks should be cancelled on the basis that "the term 'bison' is

generic in the leather goods field" and therefore "cannot be a source indicator of any kind." [#45

at ¶¶ 27, 39]. Bison Designs asserts that Lejon's pleadings are insufficient because Lejon uses

---

[2] The Parties dispute whether Lejon's allegations of deceptive misdescriptiveness are legally cognizable. According to Bison Designs, the claim must be based on allegations that Bison Designs misrepresented the corporate entity from which the goods originate, in a manner calculated to trade on the goodwill and reputation of Lejon. [#50 at 20]. However, the allegations of misrepresentation in Lejon's counterclaims center on the allegation that Bison Designs misrepresents the source of its goods by leading consumers to believe that its goods are sourced from bison, [#45 at ¶¶ 27, 39], rather than that they originate from Lejon. Lejon responds that it has adequately pled a claim for misrepresentation because the focus of the misrepresentation claim is on the analysis of the statement made in reference to an essential or material element of the goods in question, not necessarily limited to a corporate entity but rather can be directed to the ingredients of the good. [#57 at 24]. This court need not, and therefore does not, resolve this dispute because it does not impact the ultimately conclusion that deceptive misdescriptiveness is not a viable theory in challenging an incontestable mark.

the term "generic" as "a conclusory label without supporting facts regarding what the relevant public understanding [sic] about the term 'bison.'"  [#50 at 6].

"Genericness" is one of the limited grounds that may support a cancellation claim after a mark has otherwise become incontestable.  15 U.S.C. § 1064(3) (a trademark may be challenged "[a]t any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered").  A generic mark "refers to the genus of which the particular product is a species."  *Park 'N Fly*, 469 U.S. at 194; *see also Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 976 (10th Cir. 2002) ("A generic mark refers to a general class of goods, such as "cola," of which an individual article is but a member.").  Accordingly, a generic name is not protectable as a trademark, and an opponent may argue genericness as a basis for cancellation of a trademark even after that trademark has become uncontestable.  *See* 15 U.S.C. § 1064(3); *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 538 (4th Cir. 2004).

Lejon asserts in its Second Amended Counterclaims that the Bison Marks are generic because "the term 'bison' is generic in the leather goods field."  [#45 at ¶ 28].  Lejon alleges that due to Bison Designs' failure to police its marks, the Bison Marks have become widely used in the clothing, sporting goods, and leather products fields.  *See* [#45 at ¶ 38].  Lejon also attaches a list of multiple companies who use the term in the clothing, sporting goods, and leather products fields. [#45 at ¶ 38]; [#45-2]; *see also* [#45-1].  Noting the applicable pleading standard required for Lejon to state a claim for trademark invalidity and cancellation under Fed. R. Civ. P. 12(b)(6), the court finds that Lejon has provided enough facts that, if taken as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Lejon has "nudge[d] its claims across the line from conceivable to plausible" in order to survive a motion to dismiss.  *Id.*

Accordingly, the court recommends denying Bison Designs' Motion to Dismiss as it pertains to the portions of Lejon's Second Amended Counterclaims that allege genericness.

## CONCLUSION

Accordingly, for the reasons set forth herein, the court respectfully **RECOMMENDS** that:

(1)    Plaintiff's Motion to Dismiss Counterclaims I and II for Failure to Plead with Required Specificity Under Rule 9(b) and for Failure to State a Claim Under Rule 12(b)(6) [#50] be **GRANTED IN PART** and **DENIED IN PART;**

(2)    Lejon's Counterclaims I and II of Invalidity and Cancellation, respectively, as stated in its Second Amended Complaint [#45] be **DISMISSED** insofar as they rely upon descriptiveness and deceptive misdescriptiveness; and

(3)    Lejon's Counterclaims I and II of Invalidity and Cancellation be **PERMITTED TO PROCEED** insofar as they rely upon fraud, abandonment, and genericness, to be more appropriately determined by Chief Judge Krieger pursuant to the pending Motions for Summary Judgment [#66, #67] or at trial.[3]

---

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate

Dated: February 1, 2016                    BY THE COURT:

                                           s/ Nina Y. Wang
                                           United States Magistrate Judge

---

Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).   *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).