# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Chief Judge Marcia S. Krieger

Civil Action No. 14-cv-02885-MSK-NYW

**BISON DESIGNS, LLC,**

    Plaintiff,

v.

**LEJON OF CALIFORNIA, INC.,**

    Defendant.

___

## OPINION AND ORDER
___

**THIS MATTER** comes before the Court pursuant to the Magistrate Judge's Recommendation **(# 68)**, that the Plaintiff's ("BD") Motion to Dismiss Counterclaims **(# 50)** be granted, to which no party has filed Objections; the Defendant's ("Lejon") Motion for Summary Judgment **(# 66)**, BD's response **(# 69)**, and Lejon's reply **(# 72)**; and BD's Motion for Summary Judgment **(# 67)**, Lejon's response **(# 70)**, and BD's reply **(# 73)**.

## FACTS

The Court summarizes the pertinent facts here, and elaborates in its analysis[1]. Since approximately 1988, BD has manufactured leather belts, which it sells under the brand name "Bison." In or about 2003, BD registered the trademark BISON for such use.[2] BD uses the term fancifully – as the Court understands, BD does not allege that its belts are made of actual bison leather.

---

[1]    In conjunction with the motions for summary judgment, the Court construes the evidence most favorably to the non-movant.

[2]    Both parties actually registered several marks that are variants of their primary mark. For purposes of convenience, the Court will refer to both sides' "mark" in the singular.

Lejon also manufactures belts. In or about 2012, it began manufacturing belts from bison leather. In 2013, it obtained a trademarks in the term "VINTAGE BISON," used in conjunction with a drawing of a bison.[3]

In or about 2014, the parties became aware of the others' marks, and this litigation ensued. BD's Complaint (**# 1**) asserts two[4] substantive claims: (i) trademark infringement, and (ii) unfair competition, both under the Lanham Act, 15 U.S.C. § 1051 *et seq.* BD's Complaint asserts three additional "claims," which are more in the nature of requests for certain types of relief: (i) a request for an accounting, (ii) a request for injunctive relief against Lejon's further use of a mark containing the word "bison," and (iii) imposition of a constructive trust on Lejon's profits that have been wrongfully obtained through use of the BISON mark.

Lejon responded by filing an Answer and counterclaims against BD. The operative pleading, Lejon's Second Amended Counterclaim (**# 45**), asserts claims and requests for specific relief: (i) seeking a declaration that BD's mark is invalid based on a range of theories including fraud on the Patent & Trademark Office, that the marks are merely descriptive (and mis-descriptive, in that BD does not make the belts out of actual bison hide), and failure of BD to police its mark, among others; (ii) seeking cancellation of BD's mark, for essentially the same reasons; and (iii) a claim for a declaration of non-infringement.

BD moved (**# 50**) to dismiss Lejon's first and second counterclaims on various grounds. The Court referred the matter to the Magistrate Judge, and upon due consideration, the Magistrate Judge issued a Recommendation (**# 68)** that BD's motion be granted in part (with

---

[3]   Lejon's mark is registered on the Supplemental Register and is accompanied by a disclaimer of any intention to use the term BISON other than as part of the combined mark.

[4]   A third claim, sounding in trademark counterfeiting, was dismissed by the Court (**# 46)**.

regard to Lejon's counterclaims for invalidity or cancellation based on descriptiveness and misdescriptiveness), and denied in part (with regard to the counterclaims premised on fraud on the Trademark Office, abandonment for failure to police, and on genericness). More than 14 days have passed since the issuance of that Recommendation, and neither party has filed Objections pursuant to Fed. R. Civ. P. 72(b).

Separately, both sides moved for summary judgment. Lejon moves **(# 66)** for judgment arguing: (i) BD cannot establish its claim for trademark infringement, insofar as Lejon's use of the mark BISON is in a descriptive and generic capacity to identify its belts made of bison leather; (ii) BD cannot establish its claim for unfair competition for essentially the same reasons; (iii) BD's cannot establish its "claims" for various forms of relief because it cannot establish a trademark violation for the reasons set forth above; and (iv) Lejon is entitled to summary judgment on its counterclaim for a declaration of non-infringement, for the same reasons.

Separately, BD moves **(# 67)** for summary judgment on Lejon's counterclaims for invalidity and cancellation based on fraud, genericness, misdesignation, or abandonment, for various reasons.

## ANALYSIS

### A. Motion to Dismiss

Neither party has filed timely Objections to the Magistrate Judge's Recommendation that BD's motion to dismiss Lejon's counterclaims be granted in part and denied in part. In the absence of timely objections, the Court reviews the Recommendation under whatever standard of review it deems appropriate. *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991). The Court has reviewed the Recommendation under the otherwise-applicable *de novo* standard of Fed. R. Civ. P. 72(b). Upon such *de novo* review, the Court reaches the same conclusions as

the Magistrate Judge and for the same reasons. Accordingly, the Court adopts the Recommendation, and grants in part and denies in part BD's motion to dismiss on the terms set forth in the Recommendation.

### B. Summary judgment motions[5]

1. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

---

[5] Both parties expend significant effort accusing the other side of violating this Court's Practice Standards, particularly those governing the formatting of dispositive motions and responses. The Practice Standards exist to advise parties how to present their arguments in a format that will allow the Court to assess them most efficiently and effectively. Violation of the standards does not typically warrant striking of the offending document or denial of the requested relief – that is, the Standards are not "gotchas" that one party can use against its opponent to score a technical knockout, rather than succeeding on the merits. The natural consequence for a party's violation of the Practice Standards is that the party's evidence and arguments are not presented to the Court in the optimal way. The inevitable loss of persuasive power that results when an argument is presented in a fragmented or unclear way is the primary sanction that results from a violation of the Practice Standards.

That being said, the Court is obligated to observe that, besides violating the undersigned's Practice Standards, both sides are also guilty of violating D.C. Colo. L. Civ. R. 7.1(d), which states that "A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate document." Improperly embedded within BD's Motion for Summary Judgment is a distinct "Request for Judicial Notice" and supporting exhibits **(# 66-8)**; Lejon's summary judgment response contains both a Request for Judicial Notice **(# 70-15)** and a document purporting to be "objections to and a motion to strike" BD's proffered evidence **(# 70-22)**; and Lejon's reply brief contains similar "objections" **(# 72-2)**. Because these filings request relief beyond that sought by the summary judgment motions themselves, they are required to be made in a separately-filed motion. The Court has disregarded such requests as improper.

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

2. <u>Lejon's motion</u>

Lejon seeks summary judgment on BD's trademark infringement and unfair competition claims, arguing that BD cannot show that Lejon's use of VINTAGE BISON mark infringes upon BD's BISON mark because Lejon uses its own mark descriptively – that is, on products that are actually made from bison leather.

To establish a claim of trademark infringement, BD has the burden of establishing that: (i) it has a protectable mark; and (ii) Lejon used an identical or similar mark in circumstances where confusion among customers is likely. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004). Lejon's argument that it is entitled to use the term BISON in a descriptive capacity is essentially an argument that BD's BISON mark is not entitled to protection in the circumstances presented here. Marks are entitled to protection according to their degree of distinctiveness, with fanciful, arbitrary, or suggestive marks receiving greater protection, and descriptive and generic marks receiving less. *Id.*

The record is not particularly clear as to precisely how BD uses the BISON mark in conjunction with its products. The most significant depiction of how BD actually uses the mark in commerce is buried deeply within an appendix to one of Lejon's expert's reports. *Docket #* 70-11 at 73. That depiction appears to be a screenshot of BD's website, displaying the various belts it offers. As best the Court can tell, the BISON mark appears only in BD's logo at the top of the page; none of the images of BD's belts appear to conspicuously display any particular BISON mark.[6] In such circumstances, the Court will assume, for purposes of this motion, that BD's use of the mark BISON to describe belts made from cow leather or similar materials is, at least, suggestive or arbitrary. BD does not use the mark to <u>describe</u> its belts, as it is undisputed

---

[6] The Court's informal examination of BD's belts via its website at www.bisondesigns.com/catalog/leather yields the same conclusion.

that none of BD's belts are actually made from bison leather. As such, BD's use of the BISON mark in conjunction with its belts would seem to be somewhat distinctive, and thus, protected.

Lejon argues that a mark that could be distinctive when used in one context can still be generic – and thus, not entitled to protection – when used in another.[7] It points to *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 147 (2d Cir. 1997), for the proposition that "[a] word may be generic of some things and not of others." There, the plaintiff devised a new type of beer, brewed with honey, for which it sought a trademark that included the words "honey brown." The defendant later began producing its own honey-sweetened beer (of a different type) under a name that also contained the words "honey brown." The plaintiff brought claims of trademark infringement, but the trial court granted summary judgment to the defendant. In affirming, the Second Circuit explained that "[a] mark that is descriptive, suggestive, arbitrary, or fanciful when applied to some products may nonetheless be generic when applied to certain other products, namely those products that require the use of the mark in order to convey their nature to the consumer." *Id.* It conceded that the "honey brown" mark might be distinctive as to the plaintiff's product, but the defendant's use of that phrase was necessarily made in a generic sense, solely to describe the characteristics of its own beer. *Id.* at 148.

Similarly, in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir. 1976), the court found that the plaintiff might have some protectable interest in its use of the mark "safari" in conjunction with its clothing, but found that the defendant was nevertheless entitled to use the term "safari" in a descriptive sense to identify certain articles of its clothing

---

[7] Lejon carefully frames this issue as one of genericness, perhaps to distinguish its argument from the affirmative defense of "fair use" under 15 U.S.C. § 1115(b)(4). That defense permits the use of a competitor's mark in a descriptive sense, but only when that descriptive use is "other than as a mark." Here, because Lejon uses VINTAGE BISON as its own mark, it may not rely on the fair use defense.

that were commonly- and generically-used: *e.g.* "the safari hat" or "safari jacket." However, the court also refused to invalidate the plaintiff's "SAFARI" mark on grounds of genericness, finding that the plaintiff's use of that mark was not descriptive in certain circumstances: "The generic term for A&F's 'safari cloth Bermuda shorts', for example, is 'Bermuda shorts', not 'safari'." *Id.* at 13. The court " regard[ed] these terms as suggestive rather than "merely descriptive,'" and thus, denied the defendant's request to cancel the plaintiff's marks. *Id.* at 14.

Lejon contends that it uses the VINTAGE BISON mark descriptively, to designate its products that are made, in part or whole, from leather derived from bison hide. Lejon has put submitted the affidavit of its principal, John Shirinian, attesting to the proposition that the VINTAGE BISON mark is used only on products made from bison leather.

BD does not dispute the general proposition that, legally, Lejon can use the generic term BISON descriptively. (Indeed, BD also relies upon *Genesee*.) However, BD argues that, as a factual matter, Lejon uses the VINTAGE BISON mark on belts and other products that are not made of bison leather. The Court has carefully reviewed the evidence that BD supplies in support of this contention and finds that it does not stand for the proposition that BD asserts.

First, BD points to Exhibit 7, a document allegedly containing "numerous examples [of] goods marketed using the VINTAGE BISON . . . trademark[ ] that specifically include products made from other types of leather." However, as Lejon points out, most of the examples cited by BD in Exhibit 7 – a somewhat haphazard collection of photos and scraps of text, many without any apparent context  -- do not appear to use of the VINTAGE BISON mark. Assuming that Lejon is the manufacturer or seller of each of the products shown in Exhibit 7, the exhibit merely establishes that Lejon produces belts (or perhaps other products) that are made of non-bison leather; what the exhibit does not show is that Lejon has branded any of these non-bison leather

8

belts with the VINTAGE BISON mark. Indeed, only the first page of Exhibit 7 makes any reference to the VINTAGE BISON mark, and that page refers to "wallets from our VINTAGE BISON USA brand" that are apparently made from "both BISON LEATHER and CHROMEXEL OIL TAN COW LEATHER." Thus, although Exhibit 7 might establish that Lejon uses non-bison leather to make some of its products, it does not establish that Lejon brands those non-bison products with the VINTAGE BISON mark.

BD also points to Exhibit 9, an e-mail exchange that its principal, Brian Kelleghan, had with a seller on the online marketplace eBay.com. The seller had apparently offered for sale a "Lejon Tucson Brown Bison Leather Belt." Mr. Kelleghan asked the seller "is the belt made of bison or gator or cowhide or a combination?" The seller responded that "the belt itself is made of bison leather, and the gator print accent . . . is probably cow hide made to look like gator print." Mr. Kelleghan then asked the seller to photograph the back of the belt, and the seller obliged. The photograph shows the VINTAGE BISON mark, the words "Made in USA," the words "Saddle leather," and some numerals. Along with the photo, the seller stated "I was informed that this whole belt, even the gator accent, is actually made of Saddle Leather (horse hide)." Thus, BD relies upon Exhibit 9 for the proposition that the belt in question (and presumably others) bears the VINTAGE BISON mark but is actually made of "saddle leather" (which the seller described as horsehide, but which BD contends is cow leather), not bison hide.

Exhibit 9 is problematic for several reasons. Putting aside the utter lack of any evidence establishing its foundation (such as an affidavit from Mr. Kelleghan himself attesting to the exchange), it is not admissible to establish the type of leather used in the belt. BD offers it for such purpose relying on an assertion by the unnamed seller that "the whole belt . . . is actually

9

made of Saddle Leather"[8] . But, the seller's statement in this regard is classic hearsay and thus, insufficient to demonstrate a genuine issue of fact sufficient to avoid summary judgment. *Argo v. Blue Cross & Blue Shield of Kansas*, 452 F.3d 1193, 1199 (10th Cir. 2006). Similarly, to the extent that BD wishes to rely upon the photo of the belt -- and, more specifically, the phrase "Saddle Leather" printed upon it – for the proposition that the belt is not made in part or whole with bison leather, the phrase "Saddle Leather" on the belt is itself hearsay: an assertion of fact ("this belt is made of Saddle Leather") that is being offered for its truth.[9]

Accordingly, the Court finds that BD has not come forward with evidence demonstrating a genuine issue of fact that would controvert Mr. Shirinian's assertion that all Lejon products bearing the VINTAGE BISON mark contain bison leather. As such, the Court finds that BD has failed to demonstrate a genuine issue of fact as to whether Lejon's use of the VINTAGE BISON mark is thus descriptive, making use of the term BISON solely to designate the character of one of the product's components.

BD goes on to argue that "Lejon has no legal obligation to include the generic source material term(s) of any of its products in the name of any product line" and that "[d]oing so in fact goes contrary to the doctrine behind why trademarks exist and are valuable." BD's argument appears to be that although a competitor may make use of another's mark in generic, descriptive terms, it may not incorporate that mark into its own mark, as doing so "elevate[s] the word 'bison' [to] an indicator of source." BD does not cite any authority for this proposition,

---

[8] The Court skips over the additional problems evidentiary problems hidden within the seller's use of the passive voice, "I was informed . . . ."

[9] In a reply affidavit, Mr. Shirinian explains the "Saddle Leather" notation by stating that "the Tucson belt is made partially of buffalo leather." Lejon has asserted that, colloquially, the words "buffalo" and BISON refer to the same animal. Although BD states that it does not concede that point, it does not offer any evidence to refute it.

and the Court finds it untenable. In *Genesee*, the defendant did not merely seek to include the term "honey brown" on its label in a purely descriptive capacity; it sought to register its own mark in the words "Red River Valley Honey Brown Ale." 124 F.3d at 141. Similarly, Lejon is permitted to use the generic term "bison" to describe the characteristics of its bison leather goods, and it is similarly entitled to incorporate the word "bison" in a descriptive capacity in the mark "VINTAGE BISON."

Accordingly, because BD has failed to come forward with admissible evidence to establish that Lejon's use of the VINTAGE BISON mark in these circumstances infringes upon a protectable aspect of BD's BISON mark, Lejon is entitled to summary judgment on BD's claims for trademark infringement and unfair competition. Moreover, Lejon has established that its use of the VINTAGE BISON mark is permitted in a descriptive, generic capacity on products that are made in part or whole of bison leather, and has further come forward with evidence that all of its VINTAGE BISON products share that characteristic. BD has failed to come forward with contrary evidence sufficient to warrant a trial, and thus, Lejon is entitled to summary judgment on its counterclaim seeking a declaration of non-infringement.

### 3. BD's motion

BD's motion seeks summary judgment on Lejon's counterclaims for trademark invalidity or trademark cancellation. 15 U.S.C. § 1119 permits courts hearing cases involving registered marks to "determine the right to registration, [or] order the cancellation of registrations." Invalidity and cancellation are distinct but related concepts. Invalidity is a defense that an alleged infringer may raise, challenging whether the mark at issue was validly obtained. A party may also affirmatively seek to cancel another party's registration of a mark. In short, invalidity

is a shield; cancellation, a sword. [10] The same basic grounds – fraud, abandonment, etc. – can be asserted in pursuit of invalidity, cancellation, or both, and the relief sought does not materially change the analysis to be applied. *See e.g. Cent Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir, 2007) (suggesting that a finding of invalidity of a registered mark will often warrant cancellation of the mark as well).

The Court will briefly examine each of the grounds upon which Lejon seeks a determination of invalidity and/or cancellation of BD's BISON mark.

(i) Fraud on the Trademark Office

Lejon alleges that BD committed fraud on the Patent and Trademark Office ("PTO"), in that BD's application to trademark the term BISON failed to disclose BD's knowledge of numerous other entities already using the BISON mark in commerce.

A party alleging that a trademark has been procured by fraud must show: (i) that the registrant made a false representation of a material fact in the application for registration; (ii) that the registrant knew that the statement was false; (iii) that the registrant intended the PTO to rely upon the false statement; and (iv) that the PTO did, in fact, reasonably rely on the false statement. *See Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 874 (10th Cir. 1995). The burden on the party asserting fraud is a heavy one and must be established by clear and convincing evidence. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 942 (10th Cir. 1983).

Although BD began making commercial use of the BISON mark in 1987, it did not seek to register the mark with the PTO until June 2002. At that time, Mr. Kelleghan signed a declaration in the registration application stating "to the best of his/her knowledge and belief, no

---

[10] Because cancellation is a claim, not merely a defense, the party seeking cancellation must demonstrate that it has proper standing to do so. *See e.g. CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 593 (6th Cir. 2015). The Court will assume, without necessarily finding, that Lejon would have standing to seek the cancellation of BD's BISON mark.

other person, firm, corporation, or association has the right to use the mark in commerce" in a way that is likely to cause confusion. Lejon has come forward with evidence that demonstrates that, as of June 2002, several entities had registered trademarks with the PTO that both contained the word BISON and involved products in a category known as "Class 25" -- that is, clothing. For example, in 1999, a baseball team in Buffalo, New York had registered the mark "BISONS" for use in, among other things, the sale of various articles of clothing (although, notably, the listing of products does not include belts). Similarly, in 1998, Lipscomb University in Tennessee registered the mark "BISON ATHLETICS" for use in, among other things, the sale of clothing (again, not listing belts as an anticipated product).

It is undisputed that Mr. Kelleghan did not disclose these other instances of marks containing the word BISON in his 2002 trademark application, but the Court notes that Lejon has not come forward with evidence that demonstrates Mr. Kelleghan's actual knowledge of these other marks as of June 2002. Instead, Lejon argues that Mr. Kelleghan should be held to constructive knowledge of these marks, by virtue of their existing registration as of 2002, and that such constructive knowledge renders BD's application fraudulent. The Court finds that a showing of constructive knowledge that a registrant should have had at the time of a trademark application is not sufficient to show fraud.

Lejon relies primarily on *dicta* found in *Rosso and Mastracco, Inc. v. Giant Food, Inc.*, 720 F.2d 1263, 1266 (Fed. Cir. 1983). There, the plaintiff ("RM") sought to cancel the defendant's ("Giant") mark, arguing that Giant had defrauded the PTO in applying for the mark. RM's evidence was that Giant had, at some point in time, entered into a settlement agreement with a user of a similar mark, by which the parties agreed to certain geographic limits on the use of their marks. *Id.* RM argued that the settlement agreement demonstrated Giant's knowledge of

another user of the mark, and that Giant's failure to disclose that other use of the mark in its trademark application constituted fraud on the PTO. The Federal Circuit disagreed. It noted existing precedent that established that the Lanham Act "does not . . .obligate one seeking federal registration of a mark to investigate and report all other possible users of an identical or confusingly similar mark." *Id.*, *quoting Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 671 (7th Cir. 1982). The Federal Circuit went on to note that "in some instances, a senior user would be making a false oath where he fails to acknowledge conflicting rights of a junior user which are clearly established, for example, by a court decree, by the terms of a settlement agreement, or by a registration." *Id.*

Lejon seizes on the final word of the quoted phrase, interpreting it to essentially require applicants to disclose any competing uses of a mark that could be discovered through a search of existing registrations. Not only is such a construction inconsistent with the Federal Circuit's previous statement that the Lanham Act "does not obligate" applicants to conduct such an investigation, it is *dicta* insofar as the court did not proceed to cancel Giant's trademark based on an existing registration that Giant failed to disclose. Rather, the Federal Circuit found that even an express settlement agreement between Giant and the other user of the mark did not require Giant to disclose that other user in its trademark application because the settlement agreement did not amount to an admission by Giant that "use of the respective marks would be likely to cause confusion." *Id.* at 1266. Because there was a colorable argument to be made that Giant did not subjectively believe that there could be confusion over the use of the two marks, the Federal Circuit found that the settlement agreement did not establish that Giant's declaration in its trademark application was "knowingly false." *Id.*

14

Longstanding precedent makes clear that a trademark applicant's constructive knowledge, via registration, of a competing use of the mark is not a sufficient basis, of itself, to support a finding of fraud. *See e.g. Oreck Corp. v. Thompson Consumer Electronics, Inc.*, 796 F.Supp. 11152, 1160 (S.D.In. 1992) ("can constructive knowledge by a corporation, where there is no actual knowledge by the individual registrant, of a license or a prior use/registration of a mark satisfy the first element of a fraudulent obtainment claim? The short answer is no, it cannot"); *In re Bose Corp.*, 580 F.3d 1240, 1244 (Fed. Cir. 2009) ("despite the long line of precedents from the Board itself, from this court, and from other circuit courts, the Board went on to hold that [a] trademark applicant commits fraud in procuring a registration when it makes material representations of fact in its declaration which it knows or *should know* to be false or misleading . . . By equating "should have known" of the falsity with a subjective intent, the Board erroneously lowered the fraud standard to a simple negligence standard"). Lejon relies entirely on BD's constructive knowledge of other registrants using marks containing the word BISON as of 2002; it does not offer any evidence demonstrating Mr. Kelleghan's <u>actual</u> notice of such users as of that date, much less show that Mr. Kelleghan subjective believed in a likelihood of customer confusion between his proposed BISON marks and the other registered marks.[11] As

---

[11] Lejon points to an interrogatory response by BD about a situation that occurred "in or about 2002," in which "BD disputed the use of a brand marketed as 'Bison Sportlights'" by an entity of that name. BD indicated that during the time it was "evaluating whether to pursue [an action against] the operator of the Bison Sportlights brand," the entity ceased operations. Beyond pointing to the interrogatory response, Lejon has not produced any other evidence elaborating on these facts.

This is insufficient evidence of fraud on the PTO for several reasons. First, the time frames involved are unclear. Without evidence (particularly evidence that could rise to the "clear and convincing" quantum) that clarifies the time frame, the Court cannot say that Lejon can show that BD's knowledge of Bison Sportlight preceded its declaration in support of its trademark application. Second, even assuming that BD was aware of Bison Sportlight <u>prior</u> to its June 2002 trademark application, it is unclear from this evidence whether the dissolution of Bison Sportlight also occurred prior to that date. The Court cannot say that BD had an obligation

such, the Court finds that Lejon has failed to come forward with evidence sufficient to demonstrate a genuine issue of fact as to Mr. Kelleghan's specific intent to deceive the PTO.

BD is therefore entitled to summary judgment on Lejon's counterclaims for invalidity or cancellation based on fraud on the PTO.

(ii) <u>Remaining issues</u>

The Court summarily rejects Lejon's remaining grounds for its invalidity and cancellation counterclaims. Lejon contend that BD's BISON mark is "generic" and thus, subject to invalidity or cancellation pursuant to 15 U.S.C. § 1064(3). As the 10th Circuit explained in *Sally Beauty Company, Inc. v. Beautyco, Inc.*, 304 F.3d 964, 976 (10th Cir. 2002), a generic mark is one which "refers to a general class of goods . . . of which an individual article is but a member." Lejon's argument might have some traction if the belts BD sold under the BISON mark were actually made of bison leather. In such circumstances, the belts would be "but a member" of the "general class of goods" that are bison leather products, such that use of the BISON mark could be said to be generic. But it is undisputed that BD's belts are <u>not</u> made of bison leather. Thus, BD's use of the BISON mark on its non-bison leather belts is necessarily

---

to disclose a historical use of a competing mark if BD believed that the entity engaging in that competing use was now defunct. Third, and perhaps most importantly, the record does not disclose facts sufficient to demonstrate that BD actually believed that Bison Sportlight's use of the mark was one that would be likely to result in customer confusion. Indeed, the record reflects that BD was cogitating on that point at the time Bison Sportlight became defunct. As the *Rosso and Mastracco* case makes clear, it is not enough to show merely that two entities are making use of similar marks; rather, it is essential to show that the two marks were so similar that customer confusion between them was likely (and to show that the applicant recognized that likelihood of confusion). Because Lejon cannot show the degree of similarity between BD's mark and Bison Sportlight's, much less show BD's subjective belief that customer confusion between the marks was likely, this evidence fails to advance Lejon's counterclaims of fraud.

16

suggestive or fanciful, not descriptive, and certainly not generic.[12] Accordingly, Lejon's challenge to BD's mark as generic is without merit.

Lejon also asserts that BD's mark is subject to invalidity or cancellation on the grounds that it misrepresents the source of the goods sold under the mark. 15 U.S.C. § 1064 provides that a mark can be cancelled if it is "used by . . . the registrants so as to misrepresent the source of the goods or services." Lejon argues that BD's use of the BISON mark on belts that are not made of bison leather misrepresents the source of those goods. Lejon points to nothing in the record that suggests, in the context in which BD presents its goods and makes use of the BISON mark, that BD is suggesting to customers that its products are made of bison leather. Lejon relies solely upon a single ambiguous and incongruous statement in a report by its expert. That report explains that the expert was retained "to determine the extent to which, if at all, there is a likelihood of confusion between belts sold under VINTAGE BISON and BISON." Lejon points to the final sentence of the expert's report, which states "The tendency [of survey participants] to make a connection between the Vintage Bison belts and Bison Designs was not meaningfully different than use of 'bison' in informing an observer about the source of the leather that makes up the belt would cause." Lejon interprets this statement to suggest that the expert is opining that BD's use of the BISON mark confuses customers as to whether BD's belts are actually made of bison leather. Having reviewed the entirety of the expert's report, the Court finds such a contention entirely specious. At no point did Lejon's expert purport to survey participants about their beliefs as to what material BD's belts were made of. Because Lejon offers no evidence

---

[12] Lejon complains that "Any other result [except cancellation] would deprive Lejon and countless other bison leather goods merchants of the right to refer to and/or identify their products by name." This argument is somewhat disingenuous in light of Lejon's prior argument, accepted by this Court above, that BD's mark does not prevent Lejon from making descriptive use of the word BISON to identify its products made from bison leather.

whatsoever in support of its counterclaims on a theory of misrepresentation of source, BD is entitled to summary judgment on those counterclaims.

Finally, Lejon argues that BD's mark is subject to cancellation as abandoned, because BD has not taken reasonable efforts to prevent others from using the mark. A mark is abandoned when, due to the acts or omissions of the owner, it has "lost its significance as a mark." 15 U.S.C. § 1127. This can occur where unpoliced third-party use of the mark operates to convert the mark into a generic name for the goods or services, or where such use otherwise results in the mark no longer functioning as indicating the origin of the products. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1079 (5th Cir. 1997). The mere fact that a mark's owner's fails to pursue potential infringers is not enough, of itself, to establish that the mark has lost its significance. *Id.* Rather, the party asserting abandonment must show that the mark has actually lost its ability to identify its owner's goods. *Id.*

Lejon's abandonment arguments all focus solely on the fact that BD allegedly failed to challenge the use of the word BISON by third parties; Lejon has not offered any evidence that suggests that the effect of such third-party use has been to so dilute the BISON mark as to prevent it from operating to identify BD's particular goods. Indeed, the practical portion of Lejon's argument focuses almost entirely on the fact that manufacturers of bison leather make rampant use of the term BISON in a descriptive sense to identify their own goods. This is, yet again, a variation on the same theme: BD enjoys the ability to use its BISON mark in suggestive or fanciful ways to identify itself as the maker of non-bison leather belts. The fact that manufacturers of belts actually made from bison leather are entitled to use the term BISON in a descriptive and generic sense has no bearing or consequence on BD's exclusive right to make non-descriptive use of the mark.

18

Accordingly, the Court grants BD's motion for summary judgment in its entirety, and BD is entitled to judgment on Lejon's counterclaims for invalidity and cancellation.

## **CONCLUSION**

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Recommendation **(# 68)** and **GRANTS IN PART** BD's Motion to Dismiss Counterclaims **(# 50)**. The Court **GRANTS** Lejon's Motion for Summary Judgment **(# 66)**, and the Clerk of the Court shall enter judgment in favor of Lejon on BD's claims and in favor of Lejon on its counterclaim for a declaration of non-infringement, with costs pursuant to Fed. R. Civ. P. 54(d)(1). The Court **GRANTS** BD's Motion for Summary Judgment **(# 67)**, and the Clerk of the Court shall enter judgment in favor of BD on Lejon's counterclaims for invalidity and cancellation, with costs pursuant to Rule 54(d)(1). There being no claims or counterclaims that remain, the Clerk of the Court shall close this case.

Dated this 14th day of March, 2016.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge